# EXHIBIT A

Electronically Filed
Marie Zaiz
Circuit Clerk
Ashley Doughty
22LA0148
St. Clair County
2/22/2022 9:06 AM
16790089

**IN THE CIRCUIT COURT
TWENTIETH JUDICIAL CIRCUIT
ST. CLAIR COUNTY**

| | |
|---|---|
| **SHARON VERNOR, as Administrator of the Estate of LEQUON MARQUIS VERNOR, deceased,**<br><br>    **Plaintiff,**<br><br>v.<br><br>**THOMAS W. JENKINS, PA-C,**<br>Serve: Thomas W. Jenkins, PA-C<br>        1600 S. Brentwood Boulevard<br>        Brentwood, MO 63144<br><br>**and**<br><br>**GABRIELA SALES DE BRUIN, M.D.**<br>Serve: Gabriela Sales De Bruin, M.D.<br>        1600 S. Brentwood Boulevard<br>        Brentwood, MO 63144<br><br>**and**<br><br>**SEKORAI A. WIGGINS, R.M.A.,**<br>Serve: Sekorai A. Wiggins, R.M.A.<br>        1600 S. Brentwood Boulevard<br>        Brentwood, MO 63144<br><br>**and**<br><br>**THE WASHINGTON UNIVERSITY**<br>Serve: David H. Perlmutter, M.D.<br>        660 South Euclid, Campus Box 8106<br>        St. Louis, MO 63110<br><br>**and**<br><br>**LINCARE, INC.**<br>Serve: CT Corporation System<br>        208 SO Lasalle St., Suite 814<br>        Chicago, IL 60604<br><br>    **Defendants.** | **Case No.** 22LA0148<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiff Sharon Vernor, as the Administrator of the Estate of Lequon Vernor, deceased, files this Complaint against Defendants Thomas W. Jenkins, PA-C, Gabriela Sales De Bruin, M.D., Sekorai A. Wiggins, R.M.A., The Washington University, and Lincare, Inc.

## PARTIES

1.      Plaintiff Sharon Vernor ("Plaintiff") was at all times relevant hereto a resident of the State of Illinois. She brings this claim pursuant to and for damages compensable under the Illinois "Wrongful Death Act," 740 ILCS 180/1 *et seq.* and the Survival Statute, 755 ILCS/5/27-6.

2.      On September 18, 2020, Lequon Vernor ("Decedent" or "Lequon") died.  He was twenty-seven (27) years old.

3.      Plaintiff, Sharon Vernor, was the mother of Decedent and brings this action on behalf of Decedent's Estate (survival action) and on behalf of Decedent's next of kin (wrongful death action), having been duly appointed Special Administrator of the Estate of Lequon Vernor by the St. Clair County Probate Court. Ex. 1, Letters of Office (12/7/2021)

4.      Plaintiff's claims arise, in part, from medical and healthcare treatment that took place in St. Louis County, Missouri and St. Clair County, Illinois, where Defendants accepted Decedent as a patient for the purpose of providing healthcare services.

5.      At all times relevant, Defendant Thomas W. Jenkins, PA-C ("Defendant Jenkins") was and is a citizen and resident of the State of Missouri. Defendant Jenkins is a licensed physician assistant, employed by Defendant The Washington University ("Defendant Wash U"), who held himself out as a professional healthcare provider engaged in the practice of sleep medicine, offering healthcare services to the general public, including the citizens of the State of Illinois, for

consideration. At all times mentioned herein, Defendant Jenkins acted through his agents, servants, and employees, including but not limited to Sekorai A. Wiggins, R.M.A. ("Defendant Wiggins"), who acted within the scope and course of their agency and employment.

6.     Personal jurisdiction is proper over Defendant Jenkins because he committed tortious actions and transacted business in the State of Illinois, in that he actively provided healthcare and treatment, that is the subject of litigation, telephonically and virtually to Decedent, who he knew was located in the State of Illinois, and it is this specific treatment that caused and/or contributed to cause injury and death to Decedent.

7.     At all times relevant, Defendant Gabriela Sales De Bruin, M.D. ("Defendant Bruin") was and is a citizen and resident of the State of Missouri. Defendant Bruin is a licensed physician, employed by Defendant Wash U, who held herself out as a professional health care provider engaged in the practice of sleep medicine, offering healthcare services to the general public, including the citizens of the State of Illinois, for consideration. At all times mentioned herein, Defendant Bruin acted through her agents, servants, and employees, including but not limited to Defendant Jenkins and Defendant Wiggins, who acted within the scope and course of their agency and employment.

8.     Personal jurisdiction is proper over Defendant Bruin because she transacted business and committed tortious actions in the State of Illinois in that, via her agents and employees, including Defendant Jenkins and Defendant Wiggins, provided healthcare and treatment, that is the subject of litigation, telephonically and virtually to Decedent who she knew was located in the State of Illinois, and it is this specific treatment that caused and/or contributed to cause injury and death to Decedent.

9.     At all times relevant, Defendant Wiggins was and is a citizen and resident of the State of Missouri. Defendant Wiggins is a registered medical assistant, employed by Defendant Wash U, who held herself out as a professional healthcare provider engaged in the practice of sleep medicine, offering healthcare services to the general public, including the citizens of the State of Illinois, for consideration. At all times mentioned herein, Defendant Wiggins acted through her agents, servants, and employees, who acted within the scope and course of their agency and employment.

10.    Personal jurisdiction is proper over Defendant Wiggins because she committed tortious actions and transacted business in the State of Illinois, in that she actively provided healthcare and treatment, that is the subject of litigation, telephonically and virtually, and directed communication, telephonically and virtually, to and with Decedent, who she knew was located in the State of Illinois, and it is this specific treatment and communication that caused and/or contributed to cause injury and death to Decedent.

11.    At all times relevant, Defendant Wash U is a Missouri corporation in good standing doing business in the State of Illinois with the capacity to sue and be sued in its own name. At all times relevant, Defendant Wash U employed physicians, physician assistants, and/or medical assistants with specialized expertise in all aspects of medical, surgical, emergent, hospital, and nursing care, who provide and offer professional health services to the public, including citizens of the State of Illinois, for consideration. At all times mentioned herein, Defendant Wash U acted by and through its agents, servants, and employees who acted within the scope and course of their agency and employment.

12.    Defendant Wash U has past, present, ongoing, and continuing contacts with the State of Illinois by transacting substantial and regular business in the State of Illinois, providing

healthcare services in the State of Illinois, owning and/or leasing property in the State of Illinois, insuring property and persons who work and/or are domiciled in the State of Illinois such that it is subject to personal jurisdiction in the State of Illinois.

13.     Defendant Wash U is subject to personal jurisdiction in the State of Illinois because it actively markets, advertises, and directs its activities concerning healthcare into the State of Illinois.  Defendant Wash U's activities and operations in the State of Illinois are so substantial and of such a nature as to render the corporation home in the State of Illinois.

14.     Defendant Wash U has for years deliberately and continuously exploited the market for healthcare services in the State of Illinois, provided care and treatment in person, virtually, and telephonically to Decedent in the State of Illinois, and enlisted its agents, servants, and employees, including but not limited to Lincare, Inc. ("Defendant Lincare"), to provide healthcare services and products to Decedent in the State of Illinois.

15.     Personal jurisdiction is proper over Defendant Wash U because it committed tortious actions in the State of Illinois, entered contracts in the State of Illinois, owns and/or leases property in the State of Illinois, and insures persons and/or property in the State of Illinois.

16.     Personal jurisdiction over Defendant Wash U is proper in the State of Illinois because Defendant Wash U has personally availed itself of the benefits of doing business in the State of Illinois, by partnering with companies, establishing authorized equipment providers, including but not limited to Defendant Lincare, that it intends to provide necessary healthcare services and products to citizens of the State of Illinois, including Decedent.

17.     Defendant Wash U, through its deliberate actions, cultivated the State of Illinois' market for its healthcare services, including healthcare services it provided to Decedent, and has

derived millions of dollars from the State of Illinois' market, and as such is subject to personal jurisdiction in the State of Illinois.

18.    At all times relevant, Defendant Lincare is a Delaware corporation in good standing doing business in the State of Illinois with the capacity to sue and be sued in its own name. Defendant Lincare is a self-described "leading supplier of respiratory-therapy products and services for patients in the home." At all times relevant, Defendant Lincare supplied respiratory-therapy care, products, and services for patients in the home and provided and offered home products and services to the public for consideration. At all times mentioned herein, Defendant Lincare acted by and through its agents, servants, and employees who acted within the scope and course of their agency and employment.

19.    Defendant Lincare has past, present, ongoing, and continuing contacts with the State of Illinois by transacting substantial and regular business in the State of Illinois, providing healthcare services and products in the State of Illinois, owning and/or leasing property in the State of Illinois, such that it is subject to personal jurisdiction in the State of Illinois.

20.    Defendant Lincare is subject to personal jurisdiction in the State of Illinois because it actively markets, advertises, and directs its activities concerning healthcare into the State of Illinois. Defendant Lincare's activities and operations in the State of Illinois are so substantial and of such a nature as to render the corporation home in the State of Illinois.

21.    Defendant Lincare has for years deliberately and continuously exploited the market for healthcare services and products in the State of Illinois, provided care and treatment, in person, virtually, and telephonically to Decedent, in the State of Illinois, and enlisted its agents, servants, and employees to provide healthcare services and products to Decedent in the State of Illinois.

22.     Personal jurisdiction is proper of Defendant Lincare because it committed tortious actions in the State of Illinois, entered contracts in the State of Illinois, owns and/or leases property in the State of Illinois, and insures persons and/or property in the State of Illinois.

23.     Personal jurisdiction is proper in the State of Illinois because Defendant Lincare has personally availed itself of the benefits of doing business in the State of Illinois, by partnering with companies, including but not limited to Defendant Wash U, and establishing authorized equipment providers, that it intends provide necessary healthcare services and products to citizens of the State of Illinois, including Decedent.

24.     Defendant Lincare, through its deliberate actions, cultivated the State of Illinois' market for its healthcare services and products, including healthcare services and products it provided to Decedent, and has derived millions of dollars from the State of Illinois' market, and as such is subject to personal jurisdiction in the State of Illinois.

25.     At all times relevant, Defendant Jenkins was a physician assistant employed by Defendant Wash U to provide medical care and treatment to patients and is and was therefore engaged in the practice of medicine.

26.     At all times relevant, Defendant Bruin was a physician employed by Defendant Wash U to provide medical care and treatment to patients and is and was therefore engaged in the practice of medicine.

27.     At all times relevant, Defendant Wiggins was a registered medical assistant employed by Defendant Wash U to provide medical care and treatment to patients and is and was therefore engaged in the practice of medicine.

28.     At all times relevant, Defendant Jenkins acted as an agent, servant, and employee of Defendant Wash U and was acting within the scope and course of that agency, servantry, and/or employment.

29.     At all times relevant, Defendant Jenkins acted as an agent, servant, and employee of Defendant Bruin and was acting within the scope and course of that agency, servantry, and/or employment.

30.     At all times relevant, Defendant Bruin acted as an agent, servant, and employee of Defendant Wash U and was acting within the scope and course of that agency, servantry, and/or employment.

31.     At all times relevant, Defendant Wiggins acted as an agent, servant, and employee of Defendant Wash U and was acting within the scope and course of that agency, servantry, and/or employment.

32.     At all times relevant, Defendant Wiggins acted as an agent, servant, and employee of Defendant Bruin and was acting within the scope and course of that agency, servantry, and/or employment.

33.     At all times relevant, Defendant Wiggins acted as an agent, servant, and employee of Defendant Jenkins and was acting within the scope and course of that agency, servantry, and/or employment.

## VENUE

34.     Venue is proper in the Circuit Court of St. Clair County, Illinois, pursuant to 735 ILSC 5/2-101, because Defendant Lincare is located in St. Clair County, Illinois and because the transactions and/or occurrences that led to Decedent's death occurred, in part, in St. Clair County, Illinois.

## FACTUAL ALLEGATIONS

35.     Lequon was a young man with down syndrome and was mentally between ages ten (10) and twelve (12).

36.     His medical condition made him unable to advocate for himself, rendering him very vulnerable.

37.     Lequon suffered from serious sleep apnea.

38.     Lequon was prescribed a bi-pap machine by Defendants.

39.     Lequon required the bi-pap machine to breathe eleven (11) to twelve (12) hours per day, which mostly occurred at night.

40.     Defendants knew, or should have known, the nature and severity of Lequon's condition was such that Lequon needed the bi-pap machine to breathe, and that if he did not have the machine, he would be placed at an immediate and emergent risk of dying from sleep apnea complications.

41.     On or around September 14, 2020, Lequon's bi-pap machine stopped working.

42.     Plaintiff, Lequon's mother, alerted Defendants via telephone calls that Lequon was without his bi-pap machine.

43.     On the same day the bi-pap machine broke, Plaintiff called Defendant Wash U, and left a voice message for Defendant Jenkins that Lequon's bi-pap machine was inoperable.

44.     On the same day the bi-pap machine broke, Plaintiff spoke with a representative of Lincare. An employee, servant, and/or agent of Defendant Lincare told Plaintiff, over the phone, to unplug Lequon's bi-pap machine for thirty (30) minutes to see if that would fix the machine. Unplugging the machine for thirty (30) minutes did not work.  The same employee, servant, and/or agent, then told Plaintiff, over the phone, that Lequon was due for a new bi-pap machine.

45.     Defendant Lincare then undertook the responsibility of getting in contact with Defendant Jenkins to obtain Lequon a bi-pap machine.

46.     Defendants were placed on actual notice that Lequon, an extremely vulnerable young man, was without the bi-pap machine that allowed him to breathe.

47.     Two (2) days passed.

48.     Lequon was without his machine.

49.     On or around September 17, 2020, Defendant Lincare got into contact with Defendant Jenkins' medical assistant, Defendant Wiggins.

50.     On or around September 17, 2020, Plaintiff finally got ahold of Defendant Wiggins, via telephone.  Defendant Wiggins said she did not understand Lequon's name from the voicemail message, so she could not pull up his chart. Defendant Wiggins told Plaintiff she would pass the message on to Defendant Jenkins.

51.     At or around 1:00 p.m., September 18, 2020, Plaintiff found her son, Lequon, dead in his room.  He had been dead for approximately six (6) hours.

52.     Plaintiff called Lequon's name, but he did not respond.

53.     Plaintiff shook Lequon's knee, but he did not respond.

54.     Plaintiff saw foam coming out of Lequon's nostril.

55.     Plaintiff saw blood running down Lequon's face.

56.     Plaintiff called 911.

57.     The Madison County Coroner pronounced Lequon dead.

58.     He was only twenty-seven (27) years old.

59.     After Lequon's death, Defendant Jenkins called and apologized to Plaintiff for what had happened.

60.     Defendant Jenkins said he would investigate and get back with Plaintiff.

61.     He never did.

## COUNT I
## WRONGFUL DEATH
## MEDICAL MALPRACTICE—DEFENDANT WASH U

62.     Plaintiff incorporates the above allegations as though fully set forth herein.

63.     During Decedent's care and treatment, Defendant Wash U owed a duty to Decedent to use that degree of skill and learning ordinarily used by skillful, careful, and prudent members of the medical profession in providing medical services.

64.     Defendant Wash U accepted Decedent as a patient for the purpose of providing medical and diagnostic care and treatment to him.

65.     Defendant Wash U breached this duty owed to Decedent in one or more of the following respects:

a.      Defendant negligently and carelessly failed to provide appropriate medical care and treatment to Decedent in a timely manner;

b.      Defendant negligently and carelessly failed to properly treat Decedent's emergency medical condition;

c.      Defendant negligently and carelessly failed to ensure that Decedent obtained the medical care and treatment he needed in a timely manner;

d.      Defendant negligently and carelessly failed to follow its policies and procedures regarding coordination of clinical care;

e.      Defendant negligently and carelessly violated its contract, agreement, or memorandum of understanding with Defendant Lincare regarding the provision of care and treatment to patients;

f.  Defendant negligently and carelessly failed to properly coordinate Decedent's care and treatment with Defendant Lincare;

g.  Defendant negligently and carelessly failed to obtain emergent care and treatment for Decedent;

h.  Defendant negligently and carelessly failed to refer Decedent to the emergency room for emergency care and treatment;

i.  Defendant negligently and carelessly ignored and/or disregarded Plaintiff's calls and/or voice messages;

j.  Defendant negligently and carelessly ignored and/or disregarded Defendant Lincare's calls and/or voice messages;

k.  Defendant negligently and carelessly failed to prescribe Decedent a new bi-pap machine in a timely manner;

l.  Defendant negligently and carelessly failed to ensure Decedent had access to a bi-pap machine;

m.  Defendant negligently and carelessly failed to provide Decedent a bi-pap machine;

n.  Defendant negligently and carelessly failed to recognize the severity of Decedent's condition and case;

o.  Defendant negligently and carelessly failed to follow Decedent's sleep apnea plan, requesting that Defendant prescribe Decedent a bi-pap machine for his sleep apnea;

p.  Defendant negligently and carelessly failed to educate Decedent and/or his caregivers about the urgency of his medical condition;

q.     Defendant negligently and carelessly failed to maintain adequate medical records;

r.     Defendant failed to follow its own policies and procedures, or have any in place, related to documenting and reporting patient care;

s.     Defendant failed to ensure that Defendant Jenkins worked within the parameters of his collaborative practice agreement;

t.     Defendant failed to ensure that Defendant Wiggins worked within the parameters of her collaborative practice agreement;

u.     Defendant negligently and carelessly delegated Decedent's care and treatment to Defendant Jenkins, a physician assistant, who it knew or should have known was not qualified to treat Decedent's medical condition;

v.     Defendant negligently and carelessly failed to train its employees, servants, and agents, including but not limited to Defendant Jenkins and Defendant Wiggins, about how to respond to the medical needs of patients;

w.    Defendant negligently and carelessly failed to maintain adequate policies and procedures regarding properly evaluating Decedent's medical condition, maintaining and reporting patient contacts, including but not limited to voice messages, communication between and amongst healthcare providers, and ensuring patients with severe sleep apnea received their medical equipment in a timely manner; and

x.     Such further negligence as discovery and the evidence will reveal.

66.     As a direct and proximate result of Defendant Wash U's intentional acts, negligence, and carelessness, Lequon Vernor died on or around September 18, 2020. Decedent suffered severe and needless discomfort, pain, and mental anguish until his death.

67.     As a direct and proximate result of the injuries and death of Decedent, Plaintiff was required to expend, incur, and become indebted for medical and other expenses. Further, Plaintiff has forever lost the love, services, consortium, comfort, instruction, guidance, counsel, and support of Decedent. In addition, Plaintiff is entitled to all damages that Decedent sustained before his death for which he would have been entitled to recover had he lived.

68.     Defendant Wash U knew or had information from which Defendant, in the exercise of ordinary care, should have known that such conduct as described above created a high degree of probability of injury and/or death to Decedent.

WHEREFORE, Plaintiff prays for judgment against Defendant in an amount in excess of Fifty Thousand ($50,000.00), which is just, fair, and adequate under the circumstances, for pre- and post-judgment interest as provided by law, and for her costs herein expended, and for such relief as the Court deems just under the circumstances.

## COUNT II
## SURVIVAL—MEDICAL MALPRACTICE
## DEFENDANT WASH U

69.     Plaintiff incorporates the above allegations as though fully set forth herein.

70.     During Decedent's care and treatment, Defendant Wash U owed a duty to Decedent to use that degree of skill and learning ordinarily used by skillful, careful, and prudent members of the medical profession in providing medical services.

71.     Defendant Wash U accepted Decedent as a patient for the purpose of providing medical and diagnostic care and treatment to him.

72.     Defendant Wash U breached this duty owed to Decedent in one or more of the following respects:

a.      Defendant negligently and carelessly failed to provide appropriate medical care and treatment to Decedent in a timely manner;

b.      Defendant negligently and carelessly failed to properly treat Decedent's emergency medical condition;

c.      Defendant negligently and carelessly failed to ensure that Decedent obtained the medical care and treatment he needed in a timely manner;

d.      Defendant negligently and carelessly failed to follow its policies and procedures regarding coordination of clinical care;

e.      Defendant negligently and carelessly violated its contract, agreement, or memorandum of understanding with Defendant Lincare regarding the provision of care and treatment to patients;

f.      Defendant negligently and carelessly failed to properly coordinate Decedent's care and treatment with Defendant Lincare;

g.      Defendant negligently and carelessly failed to obtain emergent care and treatment for Decedent;

h.      Defendant negligently and carelessly failed to refer Decedent to the emergency room for emergency care and treatment;

i.      Defendant negligently and carelessly ignored and/or disregarded Plaintiff's calls and/or voice messages;

j.      Defendant negligently and carelessly ignored and/or disregarded Defendant Lincare's calls and/or voice messages;

k.      Defendant negligently and carelessly failed to prescribe Decedent a new bi-pap machine in a timely manner;

l.      Defendant negligently and carelessly failed to ensure Decedent had access to a bi-pap machine;

m.      Defendant negligently and carelessly failed to provide Decedent a bi-pap machine;

n.      Defendant negligently and carelessly failed to recognize the severity of Decedent's condition and case;

o.      Defendant negligently and carelessly failed to follow Decedent's sleep apnea plan, requesting that Defendant prescribe Decedent a bi-pap machine for his sleep apnea;

p.      Defendant negligently and carelessly failed to educate Decedent and/or his caregivers about the urgency of his medical condition;

q.      Defendant negligently and carelessly failed to maintain adequate medical records;

r.      Defendant failed to follow its own policies and procedures, or have any in place, related to documenting and reporting patient care;

s.      Defendant failed to ensure that Defendant Jenkins worked within the parameters of his collaborative practice agreement;

t.      Defendant failed to ensure that Defendant Wiggins worked within the parameters of her collaborative practice agreement;

u.   Defendant negligently and carelessly delegated Decedent's care and treatment to Defendant Jenkins, a physician assistant, who it knew or should have known was not qualified to treat Decedent's medical condition;

v.   Defendant negligently and carelessly failed to train its employees, servants, and agents, including but not limited to Defendant Jenkins and Defendant Wiggins, about how to respond to the medical needs of patients;

w.   Defendant negligently and carelessly failed to maintain adequate policies and procedures regarding properly evaluating Decedent's medical condition, maintaining and reporting patient contacts, including but not limited to voice messages, communication between and amongst healthcare providers, and ensuring patients with severe sleep apnea received their medical equipment in a timely manner; and

x.   Such further negligence as discovery and the evidence will reveal.

73.   As a direct and proximate result of Defendant Wash U's intentional acts, negligence, and carelessness, Lequon Vernor died on or around September 18, 2020. Decedent suffered severe and needless discomfort, pain, and mental anguish until his death, subjecting Defendant Wash U to liability pursuant to 755 ILCS 5/27-6, the Illinois Survival Statute.

WHEREFORE, Plaintiff prays for judgment against Defendant in an amount in excess of Fifty Thousand ($50,000.00), which is just, fair, and adequate under the circumstances, for pre- and post-judgment interest as provided by law, and for her costs herein expended, and for such relief as the Court deems just under the circumstances.

## COUNT III
## WRONGFUL DEATH
## MEDICAL MALPRACTICE—DEFENDANT JENKINS

74.     Plaintiff incorporates the above allegations as though fully set forth herein.

75.     During Decedent's care and treatment, Defendant Jenkins owed a duty to Decedent to use that degree of skill and learning ordinarily used by skillful, careful, and prudent members of the medical profession in providing medical services.

76.     Defendant Jenkins accepted Decedent as a patient for the purpose of providing medical and diagnostic care and treatment to him.

77.     Defendant Jenkins breached this duty owed to Decedent in one or more of the following respects:

a.     Defendant negligently and carelessly failed to provide appropriate medical care and treatment to Decedent in a timely manner;

b.     Defendant negligently and carelessly failed to properly treat Decedent's emergency medical condition;

c.     Defendant negligently and carelessly failed to ensure that Decedent obtained the medical care and treatment he needed in a timely manner;

d.     Defendant negligently and carelessly failed to follow his employer's policies and procedures regarding coordination of clinical care;

e.     Defendant negligently and carelessly failed to properly coordinate Decedent's care and treatment with Defendant Lincare;

f.     Defendant negligently and carelessly failed to obtain emergent care and treatment for Decedent;

g.   Defendant negligently and carelessly failed to refer Decedent to the emergency room for emergency care and treatment;

h.   Defendant negligently and carelessly ignored and/or disregarded Plaintiff's calls and/or voice messages;

i.   Defendant negligently and carelessly ignored and/or disregarded Defendant Lincare's calls and/or voice messages;

j.   Defendant negligently and carelessly failed to supervise Defendant Wiggins;

k.   Defendant negligently and carelessly failed to prescribe Decedent a new bi-pap machine in a timely manner;

l.   Defendant negligently and carelessly failed to provide Decedent a bi-pap machine;

m.   Defendant negligently and carelessly failed to ensure Decedent had access to a bi-pap machine;

n.   Defendant negligently and carelessly failed to recognize and/or understand the severity of Decedent's condition and case;

o.   Defendant negligently and carelessly failed to follow Decedent's sleep apnea plan, requesting that Defendant prescribe Decedent a bi-pap machine for his sleep apnea;

p.   Defendant negligently and carelessly failed to educate Decedent and/or his caregivers about the urgency of his medical condition;

q.   Defendant negligently and carelessly failed to maintain adequate medical records;

r.      Defendant failed to follow his employer's policies and procedures, or have any in place, related to documenting and reporting patient care;

s.      Defendant failed to work within the parameters of his collaborative practice agreement;

t.      Defendant failed to ensure that Defendant Wiggins worked within the parameters of her collaborative practice agreement; and

u.      Such further negligence as discovery and the evidence will reveal.

78.     As a direct and proximate result of Defendant Jenkins' intentional acts, negligence, and carelessness, Lequon Vernor died on or around September 18, 2020. Decedent suffered severe and needless discomfort, pain, and mental anguish until his death.

79.     As a direct and proximate result of the injuries and death of Decedent, Plaintiff was required to expend, incur, and become indebted for medical and other expenses. Further, Plaintiff has forever lost the love, services, consortium, comfort, instruction, guidance, counsel, and support of Decedent. In addition, Plaintiff is entitled to all damages that Decedent sustained before his death for which he would have been entitled to recover had he lived.

80.     Defendant Jenkins knew or had information from which Defendant, in the exercise of ordinary care, should have known that such conduct as described above created a high degree of probability of injury and/or death to Decedent.

WHEREFORE, Plaintiff prays for judgment against Defendant in an amount in excess of Fifty Thousand ($50,000.00), which is just, fair, and adequate under the circumstances, for pre- and post-judgment interest as provided by law, and for her costs herein expended, and for such relief as the Court deems just under the circumstances.

**COUNT IV**
**SURVIVAL—MEDICAL MALPRACTICE**
**DEFENDANT JENKINS**

81.     Plaintiff incorporates the above allegations as though fully set forth herein.

82.     During Decedent's care and treatment, Defendant Jenkins owed a duty to Decedent

to use that degree of skill and learning ordinarily used by skillful, careful, and prudent members

of the medical profession in providing medical services.

83.     Defendant Jenkins accepted Decedent as a patient for the purpose of providing

medical and diagnostic care and treatment to him.

84.     Defendant Jenkins breached this duty owed to Decedent in one or more of the

following respects:

        a.     Defendant negligently and carelessly failed to provide appropriate medical

           care and treatment to Decedent in a timely manner;

        b.     Defendant negligently and carelessly failed to properly treat Decedent's

           emergency medical condition;

        c.     Defendant negligently and carelessly failed to ensure that Decedent

           obtained the medical care and treatment he needed in a timely manner;

        d.     Defendant negligently and carelessly failed to follow his employer's

           policies and procedures regarding coordination of clinical care;

        e.     Defendant negligently and carelessly violated his contract, agreement, or

           memorandum of understanding with Defendant Lincare regarding the

           provision of care and treatment to patients;

        f.     Defendant negligently and carelessly failed to properly coordinate

           Decedent's care and treatment with Defendant Lincare;

g.      Defendant negligently and carelessly failed to obtain emergent care and treatment for Decedent;

h.      Defendant negligently and carelessly failed to refer Decedent to the emergency room for emergency care and treatment;

i.      Defendant negligently and carelessly ignored and/or disregarded Plaintiff's calls and/or voice messages;

j.      Defendant negligently and carelessly ignored and/or disregarded Defendant Lincare's calls and/or voice messages;

k.      Defendant negligently and carelessly failed to prescribe Decedent a new bi-pap machine in a timely manner;

l.      Defendant negligently and carelessly failed to ensure Decedent had access to a bi-pap machine;

m.      Defendant negligently and carelessly failed to provide Decedent a bi-pap machine;

n.      Defendant negligently and carelessly failed to recognize the severity of Decedent's condition and case;

o.      Defendant negligently and carelessly failed to follow Decedent's sleep apnea plan, requesting that Defendant prescribe Decedent a bi-pap machine for his sleep apnea;

p.      Defendant negligently and carelessly failed to educate Decedent and/or his caregivers about the urgency of his medical condition;

q.      Defendant negligently and carelessly failed to maintain adequate medical records;

r.      Defendant failed to follow his employer's policies and procedures, or have any in place, related to documenting and reporting patient care;

s.      Defendant failed to work within the parameters of his collaborative practice agreement;

t.      Defendant failed to ensure that Defendant Wiggins worked within the parameters of her collaborative practice agreement;

u.      Defendant negligently and carelessly provided Decedent care and treatment, when he knew, or should have known, he was not qualified to treat Decedent's medical condition;

v.      Defendant negligently and carelessly failed to train his employees, servants, and agents, including but not limited to Defendant Wiggins, about how to respond to the medical needs of patients;

w.      Defendant negligently and carelessly failed to maintain adequate policies and procedures regarding properly evaluating Decedent's medical condition, maintaining and reporting patient contacts, including but not limited to voice messages, communication between and amongst healthcare providers, and ensuring patients with severe sleep apnea received their medical equipment in a timely manner; and

x.      Such further negligence as discovery and the evidence will reveal.

85.     As a direct and proximate result of Defendant Jenkins' intentional acts, negligence, and carelessness, Lequon Vernor died on or around September 18, 2020. Decedent suffered severe and needless discomfort, pain, and mental anguish until his death, subjecting Defendant Jenkins to liability pursuant to 755 ILCS 5/27-6, the Illinois Survival Statute.

WHEREFORE, Plaintiff prays for judgment against Defendant in an amount in excess of Fifty Thousand ($50,000.00), which is just, fair, and adequate under the circumstances, for pre- and post-judgment interest as provided by law, and for her costs herein expended, and for such relief as the Court deems just under the circumstances.

## COUNT V
## WRONGFUL DEATH
## MEDICAL MALPRACTICE—DEFENDANT BRUIN

86.     Plaintiff incorporates the above allegations as though fully set forth herein.

87.     During Decedent's care and treatment, Defendant Bruin owed a duty to Decedent to use that degree of skill and learning ordinarily used by skillful, careful, and prudent members of the medical profession in providing medical services.

88.     Defendant Bruin accepted Decedent as a patient for the purpose of providing medical and diagnostic care and treatment to him.

89.     Defendant Bruin breached this duty owed to Decedent in one or more of the following respects:

a.      Defendant negligently and carelessly failed to supervise Defendant Jenkins and Defendant Wiggins;

b.      Defendant negligently and carelessly delegated Decedent's care and treatment to Defendant Jenkins when she knew, or should have known, he was not qualified to treat Decedent's medical condition;

c.      Defendant failed to provide appropriate medical care and treatment to Decedent in a timely manner;

d.      Defendant negligently and carelessly failed to properly treat Decedent's emergency medical condition;

e.     Defendant negligently and carelessly failed to ensure that Decedent obtained the medical care and treatment he needed in a timely manner;

f.     Defendant negligently and carelessly failed to follow her employer's policies and procedures regarding coordination of clinical care;

g.     Defendant negligently and carelessly failed to properly coordinate Decedent's care and treatment with Defendant Lincare;

h.     Defendant negligently and carelessly failed to obtain emergent care and treatment for Decedent;

i.     Defendant negligently and carelessly failed to refer Decedent to the emergency room for emergency care and treatment;

j.     Defendant negligently and carelessly ignored and/or disregarded Plaintiff's calls and/or voice messages;

k.     Defendant negligently and carelessly ignored and/or disregarded Defendant Lincare's calls and/or voice messages;

l.     Defendant negligently and carelessly failed to prescribe Decedent a new bi-pap machine in a timely manner;

m.     Defendant negligently and carelessly failed to provide Decedent a bi-pap machine;

n.     Defendant negligently and carelessly failed to ensure Decedent had access to a bi-pap machine;

o.     Defendant negligently and carelessly failed to recognize and/or understand the severity of Decedent's condition and case;

p.    Defendant negligently and carelessly failed to follow Decedent's sleep apnea plan, requesting that Defendant prescribe Decedent a bi-pap machine for his sleep apnea;

q.    Defendant negligently and carelessly failed to educate Decedent and/or his caregivers about the urgency of his medical condition;

r.    Defendant negligently and carelessly failed to maintain adequate medical records;

s.    Defendant failed to follow her employer's policies and procedures, or have any in place, related to documenting and reporting patient care;

t.    Defendant failed to work within the parameters of her collaborative practice agreement;

u.    Defendant failed to ensure that Defendant Jenkins worked within the parameters of his collaborative practice agreement;

v.    Defendant failed to ensure that Defendant Wiggins worked within the parameters of her collaborative practice agreement; and

w.    Such further negligence as discovery and the evidence will reveal.

90.    As a direct and proximate result of Defendant Bruin's intentional acts, negligence, and carelessness, Lequon Vernor died on or around September 18, 2020. Decedent suffered severe and needless discomfort, pain, and mental anguish until his death.

91.    As a direct and proximate result of the injuries and death of Decedent, Plaintiff was required to expend, incur, and become indebted for medical and other expenses. Further, Plaintiff has forever lost the love, services, consortium, comfort, instruction, guidance, counsel, and support

of Decedent. In addition, Plaintiff is entitled to all damages that Decedent sustained before his death for which he would have been entitled to recover had he lived.

92.     Defendant Bruin knew or had information from which Defendant, in the exercise of ordinary care, should have known that such conduct as described above created a high degree of probability of injury and/or death to Decedent.

WHEREFORE, Plaintiff prays for judgment against Defendant in an amount in excess of Fifty Thousand ($50,000.00), which is just, fair, and adequate under the circumstances, for pre- and post-judgment interest as provided by law, and for her costs herein expended, and for such relief as the Court deems just under the circumstances.

## COUNT VI
## SURVIVAL—MEDICAL MALPRACTICE
## DEFENDANT BRUIN

93.     Plaintiff incorporates the above allegations as though fully set forth herein.

94.     During Decedent's care and treatment, Defendant Bruin owed a duty to Decedent to use that degree of skill and learning ordinarily used by skillful, careful, and prudent members of the medical profession in providing medical services.

95.     Defendant Bruin accepted Decedent as a patient for the purpose of providing medical and diagnostic care and treatment to him.

96.     Defendant Bruin breached this duty owed to Decedent in one or more of the following respects:

   a.     Defendant negligently and carelessly failed to provide appropriate medical care and treatment to Decedent in a timely manner;

   b.     Defendant negligently and carelessly failed to properly treat Decedent's emergency medical condition;

c.   Defendant negligently and carelessly failed to ensure that Decedent obtained the medical care and treatment he needed in a timely manner;

d.   Defendant negligently and carelessly failed to follow her employer's policies and procedures regarding coordination of clinical care;

e.   Defendant negligently and carelessly violated her contract, agreement, or memorandum of understanding with Defendant Lincare regarding the provision of care and treatment to patients;

f.   Defendant negligently and carelessly failed to properly coordinate Decedent's care and treatment with Defendant Lincare;

g.   Defendant negligently and carelessly failed to obtain emergent care and treatment for Decedent;

h.   Defendant negligently and carelessly failed to refer Decedent to the emergency room for emergency care and treatment;

i.   Defendant negligently and carelessly ignored and/or disregarded Plaintiff's calls and/or voice messages;

j.   Defendant negligently and carelessly ignored and/or disregarded Defendant Lincare's calls and/or voice messages;

k.   Defendant negligently and carelessly failed to prescribe Decedent a new bi-pap machine in a timely manner;

l.   Defendant negligently and carelessly failed to ensure Decedent had access to a bi-pap machine;

m.   Defendant negligently and carelessly failed to provide Decedent a bi-pap machine;

n.   Defendant negligently and carelessly failed to recognize the severity of Decedent's condition and case;

o.   Defendant negligently and carelessly failed to follow Decedent's sleep apnea plan, requesting that Defendant prescribe Decedent a bi-pap machine for his sleep apnea;

p.   Defendant negligently and carelessly failed to educate Decedent and/or his caregivers about the urgency of his medical condition;

q.   Defendant negligently and carelessly failed to maintain adequate medical records;

r.   Defendant failed to follow her employer's policies and procedures, or have any in place, related to documenting and reporting patient care;

s.   Defendant failed to work within the parameters of her collaborative practice agreement;

t.   Defendant failed to ensure that Defendant Jenkins worked within the parameters of his collaborative practice agreement;

u.   Defendant failed to ensure that Defendant Wiggins worked within the parameters of her collaborative practice agreement;

v.   Defendant negligently and carelessly delegated Decedent's care and treatment to Defendant Jenkins, a physician assistant, who she knew, or should have known, was not qualified to treat Decedent's medical condition;

w.      Defendant negligently and carelessly failed to train her employees, servants, and agents, including but not limited to Defendant Jenkins and Defendant Wiggins, about how to respond to the medical needs of patients;

x.      Defendant negligently and carelessly failed to maintain adequate policies and procedures regarding properly evaluating Decedent's medical condition, maintaining and reporting patient contacts, including but not limited to voice messages, communication between and amongst healthcare providers, and ensuring patients with severe sleep apnea received their medical equipment in a timely manner; and

y.      Such further negligence as discovery and the evidence will reveal.

97.     As a direct and proximate result of Defendant Bruin's intentional acts, negligence, and carelessness, Lequon Vernor died on or around September 18, 2020. Decedent suffered severe and needless discomfort, pain, and mental anguish until his death, subjecting Defendant Bruin to liability pursuant to 755 ILCS 5/27-6, the Illinois Survival Statute.

WHEREFORE, Plaintiff prays for judgment against Defendant in an amount in excess of Fifty Thousand ($50,000.00), which is just, fair, and adequate under the circumstances, for pre- and post-judgment interest as provided by law, and for her costs herein expended, and for such relief as the Court deems just under the circumstances.

## COUNT VII
## WRONGFUL DEATH
## MEDICAL MALPRACTICE—DEFENDANT WIGGINS

98.     Plaintiff incorporates the above allegations as though fully set forth herein.

99.     During Decedent's care and treatment, Defendant Wiggins owed a duty to Decedent to use that degree of skill and learning ordinarily used by skillful, careful, and prudent members of the medical profession in providing medical services.

100.    Defendant Wiggins accepted Decedent as a patient for the purpose of providing medical and diagnostic care and treatment to him.

101.    Defendant Wiggins breached this duty owed to Decedent in one or more of the following respects:

    a.    Defendant negligently and carelessly failed to provide appropriate medical care and treatment to Decedent in a timely manner;

    b.    Defendant negligently and carelessly failed to properly treat Decedent's emergency medical condition;

    c.    Defendant negligently and carelessly failed to ensure that Decedent obtained the medical care and treatment he needed in a timely manner;

    d.    Defendant negligently and carelessly failed to follow her employer's policies and procedures regarding coordination of clinical care;

    e.    Defendant negligently and carelessly failed to properly coordinate Decedent's care and treatment with Defendant Lincare;

    f.    Defendant negligently and carelessly failed to obtain emergent care and treatment for Decedent;

g.      Defendant negligently and carelessly failed to refer Decedent to the emergency room for emergency care and treatment;

h.      Defendant negligently and carelessly ignored and/or disregarded Plaintiff's calls and/or voice messages;

i.      Defendant negligently and carelessly ignored and/or disregarded Defendant Lincare's calls and/or voice messages;

j.      Defendant negligently and carelessly failed to prescribe Decedent a new bi-pap machine in a timely manner;

k.      Defendant negligently and carelessly failed to provide Decedent a bi-pap machine;

l.      Defendant negligently and carelessly failed to ensure Decedent had access to a bi-pap machine;

m.      Defendant negligently and carelessly failed to recognize and/or understand the severity of Decedent's condition and case;

n.      Defendant negligently and carelessly failed to follow Decedent's sleep apnea plan, requesting that Defendant prescribe Decedent a bi-pap machine for his sleep apnea;

o.      Defendant negligently and carelessly failed to educate Decedent and/or his caregivers about the urgency of his medical condition;

p.      Defendant negligently and carelessly failed to maintain adequate medical records;

q.      Defendant failed to follow her employer's policies and procedures, or have any in place, related to documenting and reporting patient care;

r.     Defendant failed to work within the parameters of her collaborative practice agreement; and

s.     Such further negligence as discovery and the evidence will reveal.

102.    As a direct and proximate result of Defendant Wiggins' intentional acts, negligence, and carelessness, Lequon Vernor died on or around September 18, 2020. Decedent suffered severe and needless discomfort, pain, and mental anguish until his death.

103.    As a direct and proximate result of the injuries and death of Decedent, Plaintiff was required to expend, incur, and become indebted for medical and other expenses. Further, Plaintiff has forever lost the love, services, consortium, comfort, instruction, guidance, counsel, and support of Decedent. In addition, Plaintiff is entitled to all damages that Decedent sustained before his death for which he would have been entitled to recover had he lived.

104.    Defendant Wiggins knew or had information from which Defendant, in the exercise of ordinary care, should have known that such conduct as described above created a high degree of probability of injury and/or death to Decedent.

WHEREFORE, Plaintiff prays for judgment against Defendant in an amount in excess of Fifty Thousand ($50,000.00), which is just, fair, and adequate under the circumstances, for pre- and post-judgment interest as provided by law, and for her costs herein expended, and for such relief as the Court deems just under the circumstances.

**COUNT VIII**
**SURVIVAL—MEDICAL MALPRACTICE**
**DEFENDANT WIGGINS**

105.    Plaintiff incorporates the above allegations as though fully set forth herein.

106.    During Decedent's care and treatment, Defendant Wiggins owed a duty to Decedent to use that degree of skill and learning ordinarily used by skillful, careful, and prudent members of the medical profession in providing medical services.

107.    Defendant Wiggins accepted Decedent as a patient for the purpose of providing medical and diagnostic care and treatment to him.

108.    Defendant Wiggins breached this duty owed to Decedent in one or more of the following respects:

    a.    Defendant negligently and carelessly failed to provide appropriate medical care and treatment to Decedent in a timely manner;

    b.    Defendant negligently and carelessly failed to properly treat Decedent's emergency medical condition;

    c.    Defendant negligently and carelessly failed to ensure that Decedent obtained the medical care and treatment he needed in a timely manner;

    d.    Defendant negligently and carelessly failed to follow her employer's policies and procedures regarding coordination of clinical care;

    e.    Defendant negligently and carelessly violated her contract, agreement, or memorandum of understanding with Defendant Lincare regarding the provision of care and treatment to patients;

    f.    Defendant negligently and carelessly failed to properly coordinate Decedent's care and treatment with Defendant Lincare;

g.      Defendant negligently and carelessly failed to obtain emergent care and treatment for Decedent;

h.      Defendant negligently and carelessly failed to refer Decedent to the emergency room for emergency care and treatment;

i.      Defendant negligently and carelessly ignored and/or disregarded Plaintiff's calls and/or voice messages;

j.      Defendant negligently and carelessly ignored and/or disregarded Defendant Lincare's calls and/or voice messages;

k.      Defendant negligently and carelessly failed to prescribe Decedent a new bi-pap machine in a timely manner;

l.      Defendant negligently and carelessly failed to ensure Decedent had access to a bi-pap machine;

m.      Defendant negligently and carelessly failed to provide Decedent a bi-pap machine;

n.      Defendant negligently and carelessly failed to recognize the severity of Decedent's condition and case;

o.      Defendant negligently and carelessly failed to follow Decedent's sleep apnea plan, requesting that Defendant prescribe Decedent a bi-pap machine for his sleep apnea;

p.      Defendant negligently and carelessly failed to educate Decedent and/or his caregivers about the urgency of his medical condition;

q.      Defendant negligently and carelessly failed to maintain adequate medical records;

r.   Defendant failed to follow her employer's policies and procedures, or have any in place, related to documenting and reporting patient care;

s.   Defendant failed to work within the parameters of her collaborative practice agreement;

t.   Defendant negligently and carelessly provided Decedent care and treatment, when she knew, or should have known, she was not qualified to treat Decedent's medical condition;

u.   Defendant negligently and carelessly failed to follow her employer's policies and procedures regarding responding to the medical needs of patients;

v.   Defendant negligently and carelessly failed to follow her employer's policies and procedures regarding properly evaluating Decedent's medical condition, maintaining and reporting patient contacts, including but not limited to voice messages, communication between and amongst healthcare providers, and ensuring patients with severe sleep apnea received their medical equipment in a timely manner; and

w.   Such further negligence as discovery and the evidence will reveal.

109.   As a direct and proximate result of Defendant Wiggins' intentional acts, negligence, and carelessness, Lequon Vernor died on or around September 18, 2020. Decedent suffered severe and needless discomfort, pain, and mental anguish until his death, subjecting Defendant Wiggins to liability pursuant to 755 ILCS 5/27-6, the Illinois Survival Statute.

WHEREFORE, Plaintiff prays for judgment against Defendant in an amount in excess of Fifty Thousand ($50,000.00), which is just, fair, and adequate under the circumstances, for pre-

and post-judgment interest as provided by law, and for her costs herein expended, and for such relief as the Court deems just under the circumstances.

**COUNT IX**
**WRONGFUL DEATH**
**MEDICAL MALPRACTICE—DEFENDANT LINCARE**

110.    Plaintiff incorporates the above allegations as though fully set forth herein.

111.    During Decedent's care and treatment, Defendant Lincare, individually and by and through its agents, servants, and employees, owed a duty to Decedent to use that degree of skill and learning ordinarily used by skillful, careful, and prudent members of the medical profession in providing medical services.

112.    Defendant Lincare accepted Decedent as a patient for the purpose of providing respiratory-therapy products, and medical and diagnostic care and treatment to him.

113.    Defendant Lincare breached this duty owed to Decedent in one or more of the following respects:

    a.    Defendant negligently and carelessly failed to provide appropriate medical care and treatment to Decedent in a timely manner;

    b.    Defendant negligently and carelessly failed to properly treat Decedent's emergency medical condition;

    c.    Defendant negligently and carelessly failed to ensure that Decedent obtained the medical care and treatment he needed in a timely manner;

    d.    Defendant negligently hired individuals who were not qualified to provide care and treatment to Decedent;

    e.    Defendant negligently and carelessly failed to train its employees, servants, and agents;

f.      Defendant negligently and carelessly failed to follow its policies and procedures regarding coordination of clinical care;

g.      Defendant negligently and carelessly violated its contract, agreement, or memorandum of understanding with Defendant Wash U regarding the provision of care and treatment to patients;

h.      Defendant negligently and carelessly failed to properly coordinate Decedent's care and treatment with Defendant Wash U;

i.      Defendant negligently and carelessly failed to obtain emergent care and treatment for Decedent;

j.      Defendant negligently and carelessly failed to refer Decedent to the emergency room for emergency care and treatment;

k.      Defendant negligently and carelessly ignored and/or disregarded Plaintiff's calls and/or voice messages;

l.      Defendant negligently and carelessly ignored and/or disregarded Defendant Wash U's calls and/or voice messages;

m.      Defendant negligently and carelessly failed to prescribe Decedent a new bi-pap machine in a timely manner;

n.      Defendant negligently and carelessly failed to ensure Decedent had access to a bi-pap machine;

o.      Defendant negligently and carelessly failed to provide Decedent a bi-pap machine;

p.      Defendant negligently and carelessly failed to recognize the severity of Decedent's condition and case;

q.  Defendant negligently and carelessly failed to follow Decedent's sleep apnea plan, requesting that Defendant prescribe Decedent a bi-pap machine for his sleep apnea;

r.  Defendant negligently and carelessly failed to educate Decedent and/or his caregivers about the urgency of his medical condition;

s.  Defendant negligently and carelessly failed to maintain adequate medical records;

t.  Defendant failed to follow its own policies and procedures, or have any in place, related to documenting and reporting patient care;

u.  Defendant negligently and carelessly failed to train its employees, servants, and agents about how to respond to the medical needs of patients;

v.  Defendant negligently and carelessly failed to provide adequate services and products to Decedent;

w.  Defendant negligently and carelessly failed to maintain adequate policies and procedures regarding properly evaluating Decedent's medical condition, maintaining and reporting patient contacts, including but not limited to voice messages, communication between and amongst healthcare providers, and ensuring patients with severe sleep apnea received their medical equipment in a timely manner; and

x.  Such further negligence as discovery and the evidence will reveal.

114.  As a direct and proximate result of Defendant Lincare's intentional acts, negligence, and carelessness, Lequon Vernor died on or about September 18, 2020. Decedent suffered severe and needless discomfort, pain, and mental anguish until his death.

115.    As a direct and proximate result of the injuries and death of Decedent, Plaintiff was required to expend, incur, and become indebted for medical and other expenses. Further, Plaintiff has forever lost the love, services, consortium, comfort, instruction, guidance, counsel, and support of Decedent. In addition, Plaintiff is entitled to all damages that Decedent sustained before his death for which he would have been entitled to recover had he lived.

116.    Defendant Lincare knew or had information from which Defendant, in the exercise of ordinary care, should have known that such conduct as described above created a high degree of probability of injury and/or death to Decedent.

WHEREFORE, Plaintiff prays for judgment against Defendant in an amount in excess of Fifty Thousand ($50,000.00), which is just, fair, and adequate under the circumstances, for pre- and post-judgment interest as provided by law, and for her costs herein expended, and for such relief as the Court deems just under the circumstances.

### COUNT X
### SURVIVAL—MEDICAL MALPRACTICE
### DEFENDANT LINCARE

117.    Plaintiff incorporates the above allegations as though fully set forth herein.

118.    During Decedent's care and treatment, Defendant Lincare, individually and through its agents, servants, and employees, owed a duty to Decedent to use that degree of skill and learning ordinarily used by skillful, careful, and prudent members of the medical profession in providing medical services.

119.    Defendant Lincare accepted Decedent as a patient for the purpose of providing respiratory-therapy products, and medical and diagnostic care and treatment to him.

120.    Defendant Lincare breached this duty owed to Decedent in one or more of the following respects:

a.   Defendant negligently and carelessly failed to provide appropriate medical care and treatment to Decedent in a timely manner;

b.   Defendant negligently and carelessly failed to properly treat Decedent's emergency medical condition;

c.   Defendant negligently and carelessly failed to ensure that Decedent obtained the medical care and treatment he needed in a timely manner;

d.   Defendant negligently and carelessly failed to follow its policies and procedures regarding coordination of clinical care;

e.   Defendant negligently and carelessly violated its contract, agreement, or memorandum of understanding with Defendant Wash U regarding the provision of care and treatment to patients;

f.   Defendant negligently and carelessly failed to properly coordinate Decedent's care and treatment with Defendant Wash U;

g.   Defendant negligently and carelessly failed to obtain emergent care and treatment for Decedent;

h.   Defendant negligently and carelessly failed to refer Decedent to the emergency room for emergency care and treatment;

i.   Defendant negligently and carelessly ignored and/or disregarded Plaintiff's calls and/or voice messages;

j.   Defendant negligently and carelessly ignored and/or disregarded Defendant Wash U's calls and/or voice messages;

k.   Defendant negligently and carelessly failed to prescribe Decedent a new bi-pap machine in a timely manner;

l.   Defendant negligently and carelessly failed to ensure Decedent had access to a bi-pap machine;

m.   Defendant negligently and carelessly failed to provide Decedent a bi-pap machine;

n.   Defendant negligently and carelessly failed to recognize the severity of Decedent's condition and case;

o.   Defendant negligently and carelessly failed to follow Decedent's sleep apnea plan, requesting that Defendant prescribe Decedent a bi-pap machine for his sleep apnea;

p.   Defendant negligently and carelessly failed to educate Decedent and/or his caregivers about the urgency of his medical condition;

q.   Defendant negligently and carelessly failed to maintain adequate medical records;

r.   Defendant failed to follow its own policies and procedures, or have any in place, related to documenting and reporting patient care;

s.   Defendant negligently and carelessly failed to train its employees, servants, and agents about how to respond to the medical needs of patients;

t.   Defendant negligently and carelessly failed to provide adequate services to Decedent;

u.   Defendant negligently and carelessly failed to maintain adequate policies and procedures regarding properly evaluating Decedent's medical condition, maintaining and reporting patient contacts, including but not limited to voice messages, communication between and amongst healthcare

providers, and ensuring patients with severe sleep apnea received their medical equipment in a timely manner; and

v.  Such further negligence as discovery and the evidence will reveal.

121.  As a direct and proximate result of Defendant Lincare's intentional acts, negligence, and carelessness, Lequon Vernor died on or about September 18, 2020. Decedent suffered severe and needless discomfort, pain, and mental anguish until his death, subjecting Defendant Lincare to liability pursuant to 755 ILCS 5/27-6, the Illinois Survival Statute.

WHEREFORE, Plaintiff prays for judgment against Defendant in an amount in excess of Fifty Thousand ($50,000.00), which is just, fair, and adequate under the circumstances, for pre- and post-judgment interest as provided by law, and for her costs herein expended, and for such relief as the Court deems just under the circumstances.

DATED:  February 18, 2022

Respectfully submitted,

**THE SIMON LAW FIRM, P.C.**

By: /s/ *John M. Simon*
    John G. Simon, #6195127
    John M. Simon, #6322824
    Megan A. Crowe, #6337472
    800 Market Street, Suite 1700
    St. Louis, Missouri 63101
    P: (314) 241-2929
    F: (314) 241-2020
    jsimon@simonlawpc.com
    jmsimon@simonlawpc.com
    mcrowe@simonlawpc.com

*Attorneys for Plaintiff*

Electronically Filed
Marie Zaiz
Circuit Clerk
Ashley Doughty
22LA0148
St. Clair County
2/22/2022 9:06 AM
16790089

**IN THE CIRCUIT COURT**
**TWENTIETH JUDICIAL CIRCUIT**
**ST. CLAIR COUNTY**

SHARON VERNOR, as Administrator of
the Estate of LEQUON MARQUIS
VERNOR, deceased,

      Plaintiff,

v.                                                        Case No. 22LA0148

THOMAS W. JENKINS, PA-C,
GABRIELA SALES DE BRUIN, M.D.,              **JURY TRIAL DEMANDED**
SEKORAI A. WIGGINS, R.M.A., THE
WASHINGTON UNIVERSITY, and
LINCARE, INC.

      Defendants.

## AFFIDAVIT OF PLAINTIFF'S ATTORNEY

COMES NOW John M. Simon, and being first duly sworn, states as follows:

1. The Affiant is an attorney for Plaintiff

2. Affiant has consulted and reviewed the facts of this case with health professionals

who the affiant reasonable believes:

    a. Is knowledgeable in the relevant issues involved in this particular action:

    b. Practices or has practiced within the last six (6) years or teaches or has taught within

       the last six (6) years in the same area of health care of medicine that is at issue in

       this particular action; and

    c. Is qualified by experience or has demonstrated competence in the subject of the

       case.

3. The reviewing health professionals have determined in the attached written reports, after a review of the medical records and other relevant material involved in this particular action, that there is a reasonable meritorious cause for the filing of such action.

4. Affiant has concluded on the basis of the reviewing health professionals' review and consultation that there is a reasonable and meritorious cause for the filing of this action.

DATED: February 18, 2022

Respectfully submitted,

**THE SIMON LAW FIRM, P.C.**

By: _____

John G. Simon, #6195127
John M. Simon, #6322824
Megan A. Crowe, #6337472
800 Market Street, Suite 1700
St. Louis, Missouri 63101
P: (314) 241-2929
F: (314) 241-2020
jsimon@simonlawpc.com
jmsimon@simonlawpc.com
mcrowe@simonlawpc.com

*Attorneys for Plaintiff*

Subscribed and sworn to before me this 18th day of February 2022.

_____
Notary Public

My commission expires: _____

KELLY HARRIS-DETMER
Official Seal
Notary Public - State of Illinois
My Commission Expires Jul 21, 2025

Case Number:
Page **2** of **2**



John M. Simon
The Simon Law Firm, P.C.
800 Market Street, Suite 1700
St. Louis, Missouri 63101

Re: Lequon Vernor

Dear Mr. Simon:

John M. Simon The Simon Law Firm, P.C. 800 Market Street, Suite 1700 St. Louis, Missouri
63101 Re: Lequon Vernor Dear Mr. Simon: My name is ▆▆▆▆▆▆▆▆▆▆▆▆ I am a
graduate of Shanghai Medical University and the University of Medicine and Dentistry of New
Jersey – Graduate School of Biomedical Research. I completed my residency at the State
University of New York – Upstate Medical Center in pediatrics and Johns Hopkins University
in neurology. I am board certified in Psychiatry and Neurology subspecialty of sleep medicine. I
am currently a professor of neurology at Rutgers New Jersey Medical School, and am actively
practicing sleep medicine at this time. I routinely and consistently treat and evaluate patients
like Mr. Lequon Vernor on an inpatient and outpatient basis.

I have reviewed medical records relating to the care and treatment of Lequon Vernor from
Gateway Regional Medical Center, Barnes-Jewish Hospital, Abbott Emergency Medical Service,
The Washington University, LinCare, Inc, and Madison County Coroner.

Based on my review of the records, it is my opinion that Thomas Jenkins, PA deviated from the
acceptable standard of care by failing to appropriate treat Lequon Vernor's sleep apnea,
including but not limited to failing to provide Mr. Vernor with proper diagnostic care, failing to
equip Mr. Vernor with a replacement breathing machine, failing to recognize Mr. Vernor had an
emergency medical condition, failing to immediately refer Mr. Vernor for emergency treatment,
and failing to ensure Mr. Vernor was provided with the equipment he needed to breath in a
timely manner. This failure to use such reasonable care directly caused or contributed to cause
damages to Lequon Vernor, including but not limited to death. Please do not hesitate to contact
me with any questions you may have regarding my opinion. Sincerely,

Dated: _____8/10/2021_____

John M. Simon
The Simon Law Firm, P.C.
800 Market Street, Suite 1700
St. Louis, Missouri 63101

Re:     Lequon Vernor

Dear Mr. Simon:

My name is ██████████████         I am a graduate of Shanghai Medical University and the
University of Medicine and Dentistry of New Jersey – Graduate School of Biomedical Research.
I completed my residency at the State University of New York – Upstate Medical Center in
pediatrics and Johns Hopkins University in neurology. I am board certified in Psychiatry and
Neurology subspecialty of sleep medicine. I am currently a professor of neurology at Rutgers New
Jersey Medical School, and am actively practicing sleep medicine at this time. I routinely and
consistently treat and evaluate patients like Mr. Lequon Vernor on an inpatient and outpatient
basis.

I have reviewed medical records relating to the care and treatment of Lequon Vernor from Gateway
Regional Medical Center, Barnes-Jewish Hospital, Abbott Emergency Medical Service, The
Washington University, LinCare, Inc, and Madison County Coroner.

Based on my review of the records, it is my opinion that Thomas Jenkins, PA deviated from the
acceptable standard of care by failing to appropriate treat Lequon Vernor's sleep apnea, including
but not limited to failing to provide Mr. Vernor with proper diagnostic care, failing to equip Mr.
Vernor with a replacement breathing machine, failing to recognize Mr. Vernor had an emergency
medical condition, failing to immediately refer Mr. Vernor for emergency treatment, and failing
to ensure Mr. Vernor was provided with the equipment he needed to breath in a timely manner.
This failure to use such reasonable care directly caused or contributed to cause damages to Lequon
Vernor, including but not limited to death.

Please do not hesitate to contact me with any questions you may have regarding my opinion.



Dated:  8/10/2021

John M. Simon
The Simon Law Firm, P.C.
800 Market Street, Suite 1700
St. Louis, Missouri 63101

Re:    Lequon Vernor

Dear Mr. Simon:

My name is ▮▮▮▮▮▮▮▮ I am a registered respiratory therapist. I have worked as a regis
respiratory therapist providing care and treatment to patients since 2008. In addition, I curr
work as a clinical account manager and respiratory therapist for Apria Healthcare, a natio
known and recognized durable medical equipment provider, in North Charleston, South Car
In this capacity, I routinely work with patients with sleep apnea in need of c-pap and b
machines, evaluating their medical needs on a daily basis. I routinely and consistently trea
evaluate patients like Mr. Lequon Vernor on an outpatient basis.

I have reviewed medical records relating to the care and treatment of Lequon Vernor from Gat
Regional Medical Center, Barnes-Jewish Hospital, Abbott Emergency Medical Service,
Washington University, LinCare, Inc, and Madison County Coroner.

Based on my review of the records, it is my opinion that LinCare, Inc. deviated from the accep
standard of care by failing to appropriate treat Lequon Vernor's sleep apnea, including bu
limited to failing to provide Mr. Vernor with proper diagnostic care, failing to monitor
Vernor's medical care, failing to equip Mr. Vernor with a replacement breathing machine, fa
to recognize Mr. Vernor had an emergency medical condition, failing to immediately refer
Vernor for emergency treatment, and failing to ensure Mr. Vernor was provided with
equipment he needed to breath in a timely manner, and by failing to keep appropriate and ade
documentation. This failure to use such reasonable care directly caused or contributed to
damages to Lequon Vernor, including but not limited to death.

Please do not hesitate to contact me with any questions you may have regarding my opinion.



Dated: 9 14 21

John M. Simon
The Simon Law Firm, P.C.
800 Market Street, Suite 1700
St. Louis, Missouri 63101

Re:    Lequon Vernor

Dear Mr. Simon:

My name is                I am a graduate of Brigham Young University and Marywood University. I obtained my Masters of Physician Assistant studies in 2013. I have been actively practicing sleep medicine since that time. I routinely and consistently treat and evaluate patients like Mr. Lequon Vernor on an inpatient and outpatient basis.

I have reviewed medical records relating to the care and treatment of Lequon Vernor from Gateway Regional Medical Center, Barnes-Jewish Hospital, Abbott Emergency Medical Service, The Washington University, LinCare, Inc, and Madison County Coroner.

Based on my review of the records, it is my opinion that Sekorai A. Wiggins, R.M.A. deviated from the acceptable standard of care by failing to appropriate treat Lequon Vernor's sleep apnea, including but not limited to failing to provide a timely response to Mr. Vernor's medical complaints, failing to adequately communicate concerning Lequon Vernor's care, failing to adequately coordinate Lequon Vernor's care, failing to provide Mr. Vernor with proper diagnostic care, failing to equip Mr. Vernor with a replacement breathing machine, failing to recognize Mr. Vernor had an emergency medical condition, failing to immediately refer Mr. Vernor for emergency treatment, failing to ensure Mr. Vernor was provided with the equipment he needed to breath in a timely manner, and by failing to contact Mr. Vernor's care providers in a timely manner. This failure to use such reasonable care directly caused or contributed to cause damages to Lequon Vernor, including but not limited to death.

Please do not hesitate to contact me with any questions you may have regarding my opinion.

Dated: 2/16/22

John M. Simon
The Simon Law Firm, P.C.
800 Market Street, Suite 1700
St. Louis, Missouri 63101

Re:    Lequon Vernor

Dear Mr. Simon:

My name is ████████████     I am a graduate of Brigham Young University and Marywood
University. I obtained my Masters of Physician Assistant studies in 2013. I have been actively
practicing sleep medicine since that time. I routinely and consistently treat and evaluate patients
like Mr. Lequon Vernor on an inpatient and outpatient basis.

I have reviewed medical records relating to the care and treatment of Lequon Vernor from Gateway
Regional Medical Center, Barnes-Jewish Hospital, Abbott Emergency Medical Service, The
Washington University, LinCare, Inc, and Madison County Coroner.

Based on my review of the records, it is my opinion that Thomas Jenkins, PA deviated from the
acceptable standard of care by failing to appropriate treat Lequon Vernor's sleep apnea, including
but not limited to failing to provide Mr. Vernor with proper diagnostic care, failing to supervise
his medical assistant and/or office physician staff, failing to coordinate the care of Lequon Vernor,
failing to equip Mr. Vernor with a replacement breathing machine, failing to recognize Mr. Vernor
had an emergency medical condition, failing to immediately refer Mr. Vernor for emergency
treatment, and failing to ensure Mr. Vernor was provided with the equipment he needed to breath
in a timely manner. This failure to use such reasonable care directly caused or contributed to cause
damages to Lequon Vernor, including but not limited to death.

Please do not hesitate to contact me with any questions you may have regarding my opinion.



Dated:   2/16/22



John M. Simon
The Simon Law Firm, P.C.
800 Market Street, Suite 1700
St. Louis, Missouri 63101

Re: Lequon Vernor

Dear Mr. Simon:

My name is ▮▮▮▮▮▮▮▮▮▮ I am a graduate of Shanghai Medical University and the University of Medicine and Dentistry of New Jersey – Graduate School of Biomedical Research. I completed my residency at the State University of New York – Upstate Medical Center in pediatrics and Johns Hopkins University in neurology. I am board certified in Psychiatry and Neurology subspecialty of sleep medicine. I am currently a professor of neurology at Rutgers New Jersey Medical School, and am actively practicing sleep medicine at this time. I routinely and consistently treat and evaluate patients like Mr. Lequon Vernor on an inpatient and outpatient basis.

I have reviewed medical records relating to the care and treatment of Lequon Vernor from Gateway Regional Medical Center, Barnes-Jewish Hospital, Abbott Emergency Medical Service, The Washington University, LinCare, Inc, and Madison County Coroner.

Based on my review of the records, it is my opinion that Gabriela Sales de Bruin, M.D. deviated from the acceptable standard of care by failing to appropriate treat Lequon Vernor's sleep apnea, including but not limited to failing to provide Mr. Vernor with proper diagnostic care, failing to equip Mr. Vernor with a replacement breathing machine, failing to recognize Mr. Vernor had an emergency medical condition, failing to immediately refer Mr. Vernor for emergency treatment, failing to ensure Mr. Vernor was provided with the equipment he needed to breath in a timely manner, and failing to appropriately monitor and supervise the treatment provided by Thomas Jenkins, PA to Lequon Vernor. This failure to use such reasonable care directly caused or contributed to cause damages to Lequon Vernor, including but not limited to death.

Please do not hesitate to contact me with any questions you may have regarding my opinion

Dated: 8/10/2021



John M. Simon
The Simon Law Firm, P.C.
800 Market Street, Suite 1700
St. Louis, Missouri 63101

Re: Lequon Vernor

Dear Mr. Simon:

My name is                              am a graduate of Shanghai Medical University and the
University of Medicine and Dentistry of New Jersey – Graduate School of Biomedical Research.
I completed my residency at the State University of New York – Upstate Medical Center in
pediatrics and Johns Hopkins University in neurology. I am board certified in Psychiatry and
Neurology subspecialty of sleep medicine. I am currently a professor of neurology at Rutgers
New Jersey Medical School, and am actively practicing sleep medicine at this time. I routinely
and consistently treat and evaluate patients like Mr. Lequon Vernor on an inpatient and
outpatient basis.

I have reviewed medical records relating to the care and treatment of Lequon Vernor from
Gateway Regional Medical Center, Barnes-Jewish Hospital, Abbott Emergency Medical Service,
The Washington University, LinCare, Inc, and Madison County Coroner.

Based on my review of the records, it is my opinion that The Washington University deviated
from the acceptable standard of care by failing to appropriate treat Lequon Vernor's sleep
apnea, including but not limited to failing to provide Mr. Vernor with proper diagnostic care,
failing to equip Mr. Vernor with a replacement breathing machine, failing to recognize Mr.
Vernor had an emergency medical condition, failing to immediately refer Mr. Vernor for
emergency treatment, and failing to ensure Mr. Vernor was provided with the equipment he
needed to breath in a timely manner. This failure to use such reasonable care directly caused or
contributed to cause damages to Lequon Vernor, including but not limited to death.
Please do not hesitate to contact me with any questions you may have regarding my opinion

Dated: _8/10/2021_

John M. Simon
The Simon Law Firm, P.C.
800 Market Street, Suite 1700
St. Louis, Missouri  63101

Re:     Lequon Vernor

Dear Mr. Simon:

My name is █████████████████ I am a graduate of Shanghai Medical University and the University of Medicine and Dentistry of New Jersey – Graduate School of Biomedical Research. I completed my residency at the State University of New York – Upstate Medical Center in pediatrics and Johns Hopkins University in neurology. I am board certified in Psychiatry and Neurology subspecialty of sleep medicine. I am currently a professor of neurology at Rutgers New Jersey Medical School, and am actively practicing sleep medicine at this time.  I routinely and consistently treat and evaluate patients like Mr. Lequon Vernor on an inpatient and outpatient basis.

I have reviewed medical records relating to the care and treatment of Lequon Vernor from Gateway Regional Medical Center, Barnes-Jewish Hospital, Abbott Emergency Medical Service, The Washington University, LinCare, Inc, and Madison County Coroner.

Based on my review of the records, it is my opinion that Sekorai A. Wiggins, R.M.A. deviated from the acceptable standard of care by failing to appropriate treat Lequon Vernor's sleep apnea, including but not limited to failing to provide Mr. Vernor with proper diagnostic care, failing to equip Mr. Vernor with a replacement breathing machine, failing to recognize Mr. Vernor had an emergency medical condition, failing to immediately refer Mr. Vernor for emergency treatment, failing to ensure Mr. Vernor was provided with the equipment he needed to breath in a timely manner, and by failing to contact Mr. Vernor's care providers in a timely manner. This failure to use such reasonable care directly caused or contributed to cause damages to Lequon Vernor, including but not limited to death.

Please do not hesitate to contact me with any questions you may have regarding my opinion.

█████████



Electronically Filed
Marie Zaiz
Circuit Clerk
Ashley Doughty
22LA0148
St. Clair County
2/22/2022 9:06 AM
16790089

**IN THE CIRCUIT COURT**
**TWENTIETH JUDICIAL CIRCUIT**
**ST. CLAIR COUNTY**

| | |
|---|---|
| **SHARON VERNOR, as Administrator of the Estate of LEQUON MARQUIS VERNOR, deceased,** | |
| **Plaintiff,** | |
| **v.** | **Case No.** 22LA0148 |
| **THOMAS W. JENKINS, PA-C, GABRIELA SALES DE BRUIN, M.D., SEKORAI A. WIGGINS, R.M.A., THE WASHINGTON UNIVERSITY, and LINCARE, INC.** | **JURY TRIAL DEMANDED** |
| **Defendants.** | |

## AFFIDAVIT PURSUANT TO RULE 222(b)

This affidavit is made pursuant to Supreme Court Rule 222(b). Under the penalties of

perjury, the undersigned certifies that the money damages sought by Plaintiff herein do exceed

$50,000.00.

_____
John M. Simon


Subscribed and sworn to before me this 18th day of Feb. , 2022.

KELLY HARRIS-DETMER
Official Seal
Notary Public - State of Illinois
My Commission Expires Jul 21, 2025

_____
Notary Public